UNITED DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| EARL W. McCOY, JR., | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| vs. | ) | Case No. 4:06CV00694 AGF |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) ) | |

## **MEMORANDUM AND ORDER**

This action is before this Court[1] for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Earl W. McCoy was no longer disabled and thus no longer entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. For the reasons set forth below, the decision of the Commissioner shall be reversed and the case remanded for further consideration.

Plaintiff, who was born on January 14, 1972, filed for disability benefits on September 30, 1998, claiming a disability onset date of March 20, 1998, due to anxiety and depression. Tr. at 33-35. He was found disabled as of his alleged onset date due to anxiety related disorders and affective (mood) disorders, which met the criteria for a presumed-disabling impairment listed in the Commissioner's regulations (Listing 12.06 -

---

[1] The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

Anxiety Related Disorders).² Tr. at 32, 197.  On November 18, 2004, the Social Security Administration ("SSA") notified Plaintiff, then age 32, that it had reviewed his case and found a marked improvement in his depression and anxiety, which still limited his social interaction but did not cause marked problems in any other areas.  The SSA stated that Plaintiff's physical impairments only precluded "physically demanding" work, that it had determined that he was no longer disabled as of November 2004, and that his benefits would cease at the end of January 2005.  Tr. at 254-55.  An Explanation of Determination form elaborated that "[c]urrent medical evidence" showed that Plaintiff's "depression and anxiety [were] moderately well controlled with medication."  This form also stated that, due to his surgery for Arnold Chiari syndrome, it would be reasonable to continue to limit his physical capacity to light work, and that his vocational profile was consistent with the ability to adjust to several light jobs.  Tr. at 197.

Plaintiff filed a request for reconsideration.  Tr. at 250.  A hearing was held on March 23, 2005, after which it was again determined that Plaintiff was not disabled.  Tr. at 225-36.  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on July 26, 2005, at which Plaintiff was represented by counsel.  On November 17, 2005, the ALJ issued a decision that Plaintiff's mental condition had improved and that, based upon the Commissioner's Medical-Vocational

---

² The Commissioner's listings of presumed-disabling impairments appear at 20 C.F.R. Part 404, Subpart P, Appendix 1.  It is not entirely clear from the record whether the initial decision also found that Plaintiff's affective mood disorder was of sufficient severity to meet Listing 12.04.

Guidelines ("Guidelines"),[3] Plaintiff had not been disabled since January 15, 2004. Tr. at 13-18. The Appeals Council of the Social Security Administration denied Plaintiff's request for review on March 9, 2006. Tr. at 4-6. Plaintiff has thus exhausted all administrative remedies and the ALJ's decision stands as the final agency action, now under review.

Plaintiff argues that the ALJ improperly relied upon the Guidelines in finding that Plaintiff was not disabled, in light of the record evidence of an existing non-exertional mental impairment. Plaintiff requests that the decision of the Commissioner be reversed and that Plaintiff be awarded continuing benefits, or alternatively, that the decision be reversed and the case remanded for a proper assessment of Plaintiff's residual functional capacity ("RFC") and for obtaining testimony from a vocational expert ("VE").

**Work History**

Forms submitted by Plaintiff in connection with his application for benefits indicate that he worked mainly in factory-type jobs, as a material handler and punch press operator, from approximately 1988 to 1998. Tr. at 43-48.

**Medical Record**

As Plaintiff's argument before this Court primarily involves his mental impairments, the Court will focus its review of the medical record related to this issue. By way of background, on March 20, 1998, Plaintiff underwent a posterior craniotomy

---

[3] The Guidelines appear at 20 C.F.R. Part 404, Subpart P, Appendix 2.

after he presented personality changes, numbness in his upper limbs, and headaches, and after an MRI showed an Arnold-Chiari malformation (a congenital anomaly of the brain, which may lead to limb weakness and difficulty breathing) and cervical syringomyelia (a disorder of the spine which may lead to pain, weakness, and stiffness in the back, shoulders, arms, or legs). Tr. at 189-90. After his brain surgery, Plaintiff began to experience extreme panic and depression, and was hospitalized in October 1998, due to severe symptoms. Tr. at 197, 108-09.

Much of the medical record before the Court relates to Plaintiff's condition prior to the award of benefits as of March 1998. Reference is made in a later medical report to Plaintiff's one week hospitalization in an inpatient psychiatric unit in 2000.

On October 18, 2004, Joseph Long, Ph.D., conducted a psychological evaluation of Plaintiff. He observed that Plaintiff was alert and oriented, and was able to remember three of three items in a test of short term memory. Dr. Long found no evidence of gross impairment of psychological functioning due to hallucinations, delusional ideation, or extreme emotional lability. Plaintiff's intellect was estimated to be within the average to perhaps below average range. Dr. Long recounted Plaintiff's history of emotional problems per Plaintiff's account. Plaintiff reported to Dr. Long that, for the last several years, he consumed large amounts of beer--at times two twelve packs a day--but that he had been off alcohol for the past month and was not sleeping well. Plaintiff also reported that he chewed a can of smokeless tobacco and consumed up to three pots of coffee a day. Dr. Long diagnosed mood disorder with hypomanic features, possibly related to

4

Arnold-Chiari malformation; alcohol dependence, in remission at present; depressive and panic disorders by history, in remission; and caffeine dependence. Dr. Long also diagnosed personality disorder (NOS, not otherwise specified, mild severity). Dr. Long opined that Plaintiff's ability to understand and remember instructions was basically intact, that Plaintiff's ability to sustain concentration and persist with tasks was seen as no more than moderately impaired, that Plaintiff's social and adaptive functioning was seen as no more than moderately impaired, and that Plaintiff was able to manage basic finances. Tr. at 434-37.

On October 19, 2004, Bobby Enkvetchakul, M.D., prepared a report in connection with Plaintiff's continued eligibility for disability benefits. On physical examination, Dr. Enkvetchakul noted that pain was Plaintiff's limiting complaint. The Beck Depression Inventory was administered and Plaintiff scored a 17 out of 63, which corresponded to borderline depression. Dr. Enkvetchakul diagnosed Arnold-Chiari malformation and cervical syringomyelia, status post surgical correction on April 20, 1998; back pain; and depression. In discussing his impression, Dr. Enkvetchakul opined that Plaintiff's complaints appeared to be more consistent with a psychiatric cause than with an organic cause, in that his psychical examination did not reveal "strong objective neurological findings" for Plaintiff's problems. Dr. Enkvetchakul recommended reevaluation by a neurosurgeon, as well as by a psychiatrist, to help clarify the situation. Dr. Enkvetchakul stated that he saw little objective evidence for any work restrictions, except for work

where binocular vision was critical, as Plaintiff had amblyopia (lazy eye) of the left eye. Tr. at 438-40.

On November 3, 2004, a state agency consulting psychologist, Stanley Hutson, Ph.D., completed a Mental RFC Assessment. Dr. Hutson indicated on the check-box form that Plaintiff was moderately limited in his ability to interact appropriately with the general public; to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; to respond appropriately to changes in the work setting; and to set realistic goals or make plans independently of others. Dr. Hutson found no other functional limitations. In narrative form, Dr. Hutson wrote that Plaintiff had mild to moderate limitations caused by mental disorders currently, and that, as to Plaintiff's mental disorders, "there has been medical improvement related to the ability to work." Tr. at 309-11.

Dr. Hutson also completed a Psychiatric Review Technique form on November 3, 2004, in which he noted that Plaintiff had the following medically determinable impairments: mood disorder with hypomanic features (Listing 12.04); panic disorder by history, not currently diagnosed (Listing 12.06); personality disorder (Listing 12.08); and alcohol dependence, in remission (Listing 12.09). The listings for these disorders set forth three criteria, "A," "B, and "C." The required level of severity for Listing 12.04 is met when A and B are met, or when C is met. The required level of severity for Listing 12.06 is met when A and B are met, or when A and C are met. For B to be met in each of these listings the individual must have marked difficulty in at least two of three functional

6

areas (daily living, social functioning, and maintaining concentration persistence, or pace), or marked difficulty in at least one of these areas plus repeated episodes of decompensation, each of extended duration. For Listing 12.04, C is a chronic affective disorder of at least two years' duration, with the presence of certain enumerated characteristics, that more than minimally effects functioning even under treatment. For Listing 12.06, C is the complete inability to function independently outside one's home.

In rating Plaintiff's functional limitations due to these disorders, Dr. Hutson indicated that Plaintiff was mildly limited with respect to activities of daily living, and maintaining concentration, persistence or pace; and moderately limited with respect to social functioning. Thus the B criteria were not met. Dr. Hutson found that the evidence did not establish the presence of the C criteria. Dr. Hutson concluded as follows: "[Plaintiff] appears to have made some adjustment to his physical problems and he is able to cope better when he takes medicine for depression. His mental disorders are severe but do not meet or equate the listing. [Drug and Alcohol Abuse] are not considered material." Tr. at 313-25.

On January 12, 2005, another Mental RFC Assessment was completed by non-examining psychologist Mark Altomari, Ph.D. Dr. Altomari indicated on the check-box form that Plaintiff was moderately limited in his ability to interact with the general public; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in the work setting. Dr. Altomari found no other functional limitations. In narrative form, Dr. Altomari

7

concluded as follows: "[Plaintiff] has the ability to understand, remember and carry out complex instructions. [H]e can relate appropriately to co-workers and supervisors. [H]e can adapt to changes in the work place. [A]nd he can make simple, work-related decisions. Medical improvement has occurred." Tr. at 327-29.

Medical notes by Robyn Hedges, R.N., dated March 3, 2005, stated that Plaintiff presented himself to become reestablished as a patient and for follow up with regard to Paxil. Plaintiff reportedly stated that he generally had been doing well except that he had some increased irritability and depressive symptoms since he had discontinued the use of Paxil. Plaintiff was assessed with depression and restarted on Paxil. Tr. at 415 Nurse Hedges' medical notes from April 29, 2005, assessed Plaintiff with several physical problems and also noted that his depression and anxiety were "not controlled." His prescription for Paxil was increased. Tr. at 413.

On June 17, 2005, Plaintiff was seen in the ER following a witnessed attempted suicide by overdosing on Paxil. Tr. at 401-12. Plaintiff was transferred to another hospital on June 18, 2005, where he underwent detoxification. He was discharged on June 21, 2005, in "greatly improved" condition. The discharge summary noted that Plaintiff denied depression, expressed remorse for having started drinking again, and was committed to maintaining his abstinence. Plaintiff's diagnosis upon discharge was alcohol dependence, and major depression in remission. Tr. at 383.

On July 5, 2005, Plaintiff reported to Matt Tiefenbrunn, M.D., that he believed the Paxil was "working reasonably well to control his anxiety and depression symptoms,"

8

and that it worked better than the Paxil CR (controlled release), which he had taken at one time. Tr. at 412.

**<ins>Evidentiary Hearing of July 26, 2005</ins>**

Plaintiff testified at the evidentiary hearing that he was 33, married, had a 12th grade education, and had two children, currently ages eleven and eight, for whom he cared in the summer. Plaintiff described his past work, and stated that he was currently seeing doctors for depression, anxiety, back pain, hip pain, and numbness in his hands. He testified that he got headaches about two or three times a week which lasted from one hour to all day. He stated that he drove a car two or three times a week for about three miles to see his parents. Plaintiff did various jobs around the house, like helping with the dishes, and doing some cooking. Plaintiff then described his physical limitations due to back, hip, and hand pain. Tr. at 22-27.

When asked to describe his depression and anxiety, Plaintiff testified that he experienced panic attacks two to three times per day. He testified that he was always nervous, and did not have any interest in anything anymore. His panic attacks were scary and felt like "a sudden rush of fear or paranoia," "like a dreamy feeling . . . like what am I doing here?" Tr. at 27. Plaintiff stated that he stopped drinking alcohol on June 17, 2005, because he was put on a 96-hour hold for being drunk and attempting suicide. Before that incident, Plaintiff would normally drink two or three 40-ounce cans of beer every three to five days. Tr. at 27-29.

9

Plaintiff stated that he had called a psychiatrist/psychologist at a regional medical center (Dr. Mary Eiman) for an appointment and was waiting for her office to call him back to tell him when it was. At the time of the hearing, Plaintiff was taking Paxil, Ativan, and Ultram. The ALJ granted Plaintiff's counsel's request to keep the record open for 30 days to submit the record from the regional medical center. No such documents were submitted. Tr. at 198.

**ALJ's Decision of November 17, 2005**

The ALJ found that since at least January 15, 2004, Plaintiff no longer met the criteria of Listing 12.06 (Anxiety Related Disorders). In support of his finding that the medical record did "not show a diagnosis for a panic disorder or any other anxiety related disorder," the ALJ relied upon Dr. Long's October 18, 2004 consultative evaluation of Plaintiff, which "merely diagnosed" a mood disorder, and which concluded that Plaintiff's panic disorder had been in remission. The ALJ stated that no longer meeting the listing that had been previously met was "per se evidence that the improvement is related to the ability to work," citing 20 C.F.R. § 404.1594(c)(3)(I). Accordingly, the ALJ dismissed Plaintiff's allegation of an anxiety disorder with panic attacks "for want of a medically determinable impairment." Tr. at 14.

The ALJ next concluded that Plaintiff's depression had not been severe, pointing to the lack of mental health treatment other than "psychotropic" medication which Plaintiff admitted to Dr. Tiefenbrunn on July 5, 2005, effectively controlled Plaintiff's depression. Also, the ALJ relied upon the negative result on the Beck Depression
10

Inventory administered on October 19, 2004, and the hospital report of June 21, 2005, stating that Plaintiff's depression was in remission. The ALJ credited Dr. Long's October 18, 2004 conclusions that Plaintiff had an intact ability to understand and remember instructions, and that Plaintiff's ability to sustain concentration and persist with tasks was no more than mildly impaired. The ALJ, however, stated that he did not give any weight to Dr. Long's opinion that Plaintiff had moderately impaired social and adaptive functioning, because, according to the ALJ, this opinion was not based on any objective evidence. Id.

Dr. Hutson's November 3, 2004 conclusion that Plaintiff had moderate limitations in responding appropriately to co-workers, the general public, changes in the work setting, and setting realistic goals independently of others was given "slight weight," for want of objective medical evidence. The ALJ concluded that Plaintiff "thus" had no restrictions of activities of daily living, no difficulties maintaining social functioning, no episodes of decompensation, and no more than mild difficulties maintaining concentration, persistence, and pace. Id.

The ALJ found that Plaintiff's discogenic and degenerative disorders of the back, and bilateral carpal tunnel syndrome were severe impairments. The ALJ concluded that Plaintiff's alcoholism was not a severe impairment, observing that "[t]he relevant medical record does not even show treatment of this condition, save for three days of detoxification in June 2005." Tr. at 15. The ALJ then proceeded to assess Plaintiff's RFC, citing Polaski v. Heckler, 739 F.2d 1320, 1321-22 (8th Cir. 1984), and 20 C.F.R.

§ 404.1529 as setting forth the relevant factors to consider. The ALJ summarized Plaintiff's testimony at the hearing and the medical record with regard to Plaintiff's physical problems. The ALJ found that Plaintiff lacked credibility, in that the record showed that Plaintiff had been able to perform most household chores, tend to his personal needs, drive, fish, and build model cars. The record also showed only infrequent visits to physicians and only conservative treatment for his spinal condition. Plaintiff's primary analgesic had been Ultram, which the ALJ stated was widely prescribed for relief of mild to moderate pain. The ALJ noted that Plaintiff testified that he had headaches lasting from an hour to all day, but the medical record did not show any such complaints to any physician. The ALJ inferred from this that Plaintiff's symptoms had not been so intense or frequent as to be disabling. The ALJ found that Plaintiff's practice of applying a heating pad to his back could not "reasonably be considered representative of a disabling condition." Tr. at 16.

The ALJ determined that Plaintiff had the physical RFC to perform a wide range of light work. The ALJ found that Plaintiff was unable to perform his past work since January 15, 2004, because these jobs involved a greater exertional level than light work. The ALJ then applied Plaintiff's vocational profile (younger individual with a high school education and no transferrable skills) to the Guidelines for an individual who could perform light work, and based upon the Guidelines result, found that Plaintiff was not disabled as of January 15, 2004. Tr. at 15-16.

# DISCUSSION

## Standard of Review and Statutory Framework

In reviewing the denial of Social Security disability benefits, a court must affirm the Commissioner's decision "so long as it conforms to the law and is supported by substantial evidence on the record as a whole." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005). This "entails 'a more scrutinizing analysis'" than the substantial evidence standard. Id. (quoting Wilson v. Sullivan, 886 F.2d 172, 175 (8th Cir. 1989)). The court's review "'is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision'"; the court must "'also take into account whatever in the record fairly detracts from that decision.'" Id. (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)). Reversal is not warranted, however, "'merely because substantial evidence would have supported an opposite decision.'" Id. (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)).

The continuing disability review process entails a sequential analysis prescribed in 20 C.F.R. § 404.1594(f).

> The regulations for determining whether a claimant's disability has ceased may involve up to eight steps in which the Commissioner must determine (1) whether the claimant is currently engaging in substantial gainful activity, (2) if not, whether the disability continues because the claimant's impairments meet or equal the severity of a listed impairment, (3) whether there has been a medical improvement, (4) if there has been medical improvement, whether it is related to the claimant's ability to work, (5) if there has been no medical improvement or if the medical improvement is not related to the claimant's ability to work, whether any exception to medical improvement applies, (6) if there is medical improvement and it is shown to be related to the claimant's ability to work, whether all of the

claimant's current impairments in combination are severe, (7) if the current impairment or combination of impairments is severe, whether the claimant has the [RFC] to perform any of his past relevant work activity, and (8) if the claimant is unable to do work performed in the past, whether the claimant can perform other work.

Dixon v. Barnhart, 324 F.3d 997, 1000-01 (8th Cir. 2003).

The Commissioner's regulations provide that "when an impairment's severity no longer meets a listing, it will be found that the medical improvement is related to the ability to work." see Penyweit v. Barnhart,156 Fed. Appx. 868, 870 (8th Cir. 2005) (citing 20 C.F.R. § 404.1594(c)(3)(i)). Here the ALJ went through all the steps of the evaluation process, deciding at the last step that Plaintiff could perform light work and that, based upon the Guidelines, he was therefore not disabled.

**Assessment of Plaintiff's RFC and Reliance upon the Guidelines**

Plaintiff argues that the ALJ erred here by not including a non-exertional limitation in Plaintiff's RFC. A disability claimant's RFC is the most he or she can still do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). In McCoy v. Schweiker, 683 F.2d 1138 (8th Cir. 1982) (en banc), the Eighth Circuit defined RFC as the ability to do the requisite work-related acts "day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." Id. at 1147. The ALJ's determination of an individual's RFC should be "based on all the evidence in the record, including 'the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Krogmeier v. Barnhart, 294 F.3d 1019, 1024 (8th Cir. 2002) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)).

As noted above, the ALJ found that Plaintiff's anxiety disorder was no longer a medically determinable impairment, and that Plaintiff's depression was not severe. The ALJ then, however, dropped Plaintiff's depression from the analysis in the subsequent steps of the evaluation process, and analyzed only the effects of Plaintiff's physical problems on Plaintiff's RFC. The relevant statutory provision and regulation indicates that this was error. Title 42 U.S.C. § 423(d)(2)(B) provides:

> In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity. If the Commissioner of Social Security does find a medically severe combination of impairments, the combined impact of the impairments shall be considered throughout the disability determination process.

20 C.F.R. § 404.1523 (Multiple Impairments) essentially tracks this language.

In addition, Social Security Ruling 96-8p (1996 WL 374184) states:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may - when considered with limitations or restrictions due to other impairments - be critical to the outcome of a claim.

Case law does not require "an elaborate articulation of the ALJ's thought processes" where the ALJ discusses and considers each of a claimant's multiple impairments, and concludes that they are not disabling in combination. See, e.g., Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992). Here, however, unlike in

15

Browning and similar cases, the ALJ nowhere states, even summarily, that he considered Plaintiff's impairments in combination at any step of the sequential evaluation process. Rather than speculate as to what the ALJ would find at the relevant steps of the evaluation process if the combined effect of all of Plaintiff's severe and non-severe impairments were considered, the Court believes that the better course of action is to remand the case for the ALJ to make that determination in the first instance.

For similar reasons, the ALJ's reliance upon the Guidelines is problematic and requires remand. The Guidelines can only be relied upon if a claimant can perform the full range of work in a particular category of work (very heavy, heavy, medium, light, and sedentary) listed in the Commissioner's regulations. Where, however, a claimant cannot perform the full range of work in a particular category due to nonexertional impairments such as pain or depression, the ALJ cannot carry this burden by relying exclusively on the Guidelines, but must consider testimony of a VE. See Muncy v. Apfel, 24 F.3d 728, 735 (8th Cir. 2001) (remanding medical-improvements benefits termination decision where ALJ may have improperly relied upon the Guidelines by failing to consider the effect of claimant's borderline intellectual functioning on his RFC).

The Court also notes that in evaluating the severity of Plaintiff's mental impairments the ALJ did not seem to consider Plaintiff's June 17, 2005 suicide attempt, but rather treated Plaintiff's hospitalization following the attempt as only for alcohol detoxicification. It is also not clear to the Court why the ALJ decided not to give any weight to Dr. Long's opinion that Plaintiff had moderately impaired social and adaptive

16

functioning, while the ALJ accepted Dr. Long's other opinions. On remand, the ALJ should reassess Plaintiff's RFC by considering the entire record and the combined effect of Plaintiff's mental and physical impairments. The testimony of a VE may be necessary as to whether there were jobs in the economy which a person with Plaintiff's RFC and vocational profile could perform.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner be **REVERSED** and that the case be **REMANDED** for further consideration consistent with this Memorandum and Order.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated on this 28th day of September, 2007.